IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

[FILED]
JAN 0 2 2001
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

RUBY THORNTON, *

Plaintiff, *

v. * CIVIL ACTION NO.: CV-00-T-1287-N

TRIM LABORATORIES, INC. *
a division of PL DEVELOPMENTS, and/or
PL DEVELOPMENTS, and/or CORWOOD *
LABORATORIES, a corporation,
*
Defendants.

## CORWOOD LABORATORIES, INC. AND TRIM LABORATORIES, INC.'S, BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Corwood Laboratories, Inc. ("Corwood") and Trim Laboratories, Inc. ("Trim Labs"), two of the Defendants in the above-styled action, and file their brief in support of their motion for summary judgment as follows:

### NARRATIVE OF UNDISPUTED FACTS

1.  This is a products liability case brought pursuant to the Alabama Extended Manufacturers Liability Act (AEMLD). (complaint). Plaintiff alleges that she suffered various physical damages after she used Rite Aid brand "Cool-Hot" gel. (Id.). The gel was manufactured and packaged by Corwood, for Trim Labs. (Affidavit of Irwin Thaler attached in support as Exhibit "A"). Trim Labs then sold it to Rite Aid of Alabama, Inc., which was voluntarily dismissed by Plaintiff from this action (Id.).

2.  Cool-Hot gel is a non prescription analgesic gel, which is used by rubbing onto the skin for the temporary relief of pain. (Affidavit of Nawab Faridi attached in support as Exhibit "B,"

26

¶ 4).

3. Plaintiff admits that she did not purchase the gel. (Depo. of R. Thornton. p. 53 1.1-3). Instead, Plaintiff claims that her sister, Francis Goodwin, purchased it for Plaintiff's brother-in-law, who used it before giving it to Plaintiff to use. (Id. at p. 53 1.1-3; p. 54 1.18, 19; p. 5 1.1-8). Plaintiff does not know exactly how much of the gel was used by her brother-in-law, but at one point in her deposition she said he used "all of it except enough to put on me four times." (Id. at p. 57 1.5 -21). Plaintiff does not know where the jar was kept while it was at her sister's house or what condition it was kept in. (Id. at p. 179 1.9-20).

4. Plaintiff alleges that on August 1, 1996, Goodwin applied the gel to her right shoulder and right upper chest. (Id. at p.52 1.11-15). Goodwin applied the gel once more that day, and twice the next day. (Id. at p. 62 1.23; p. 63 1.1; p. 70 1.11-13; p. 73 1.16-18). Plaintiff claims that by the second day she noticed welts on her skin, and that over the next several days her skin condition grew worse so that she eventually had to see a doctor on August 5, 1996, and was admitted to L. V. Stabler Memorial Hospital on August 6, 1996. (Id. at p. 73 1.20 - p. 74 1.20; p. 79 1.2-9; p. 89 1.14-18).[1] Plaintiff alleges to have suffered burns, scarring and chronic nerve damage because of the gel (complaint).

5. Plaintiff admits that no physician has ever actually told her that her injuries were actually caused by the gel. (Depo. of Thornton, p. 174 1.2 - p. 175 1.11).

6. Nawab Faridi is the director of quality control at Corwood. He holds a Bachelor of

---

[1] Defendants do not admit Plaintiff actually used the gel, or that her injuries appeared as, or when she claims. Defendants dispute that the gel caused any of Plaintiff's injuries. These facts are included merely for purposes of summary judgment.

2

Science degree in biochemistry, and a masters degree in biochemistry. He has worked in the chemistry/laboratory testing field for the last 23 years and has been the director of quality control at Corwood for the last seven years. His daily responsibilities include the oversight and participation in chemical tests of Corwood's various products. (Exhibit "B" ¶ 2).

7.	Mr. Faridi has testified by affidavit that the Cool-Hot gel allegedly used by Plaintiff was manufactured by Corwood, in a batch that was produced on August 2, 1995, identified as lot # Z169. (Exhibit "B," ¶ 3). The formula for the gel was developed by the research and development department at Corwood. (Id.). Attached as Exhibit "1" to Mr. Faridi's affidavit (Exhibit "B") is a copy of the formula for Cool-Hot gel, which lists the ingredients and each ingredient's total percentage in the final product. (Id.).

8.	The only active ingredient in Cool-Hot gel is natural menthol crystal. (Id.). Menthol is generally recognized as an analgesic, and has been classified in the United States Pharmacopoeia, as well as in the United States Federal Register, as a topical analgesic. (Id. at ¶ 4). The menthol used to make this batch was obtained from Irving R. Boody, Inc., and was certified as meeting specifications pursuant to the United States Pharmacopoeia (Id. at ¶ 5).

9.	All of the ingredients used to manufacture Cool-Hot gel are safe for use in this type of product, pursuant to the United States Pharmacopoeia. (Id. at ¶ 6,8). In addition, the active ingredient of menthol is safe and suitable in this type of product at levels of up to 16% of the product. (Id. at ¶ 6). Corwood's formula only called for 2% menthol (Id.). This percentage is well within the safe and acceptable level for menthol content of products of this type. (Id.). The formula of the product was safe and not unreasonably dangerous for its intended purpose. (Id. at ¶ 8).

10.	After lot Z169 was produced, it was tested by Corwood's quality control lab. (Id. at

3

¶ 7). These tests show that the finished product met all physical specifications regarding color, odor, appearance, PH level, specific gravity, and viscosity. (Id.) They further found that the total menthol level for the batch was 1.98%, which fell well within the acceptable range of 1.80 to 2.20%. (Id.). As such, lot # Z169, which included the gel contained in the Rite Aid jar allegedly used by plaintiff, conformed to the formula and specifications. (Id.)

11. After lot # Z169 was approved, it was put into containers and packaged at Corwood, and then shipped by Trim Labs to Rite Aid. (Exhibit "A" ¶ 3). Trim Labs did not design or manufacture the gel. (Id. at ¶ 2). Trim Labs did not test or inspect the gel because it was filled and packaged by Corwood and was in closed containers when Trim Labs received it. (Id. at ¶ 4).

12. With the exception of this lawsuit, Corwood has received no complaints or claims from anyone regarding the Cool-Hot gel that was produced in lot # Z169, or in any other batch. (Id. at ¶ 9).

13. Shortly after this action was commenced against Corwood and Trim Labs, Corwood served an interrogatory on Plaintiff and her attorney requesting the following information:

> 14. In your complaint, you allege that you were injured as a result of using the "Icy Hot" type cream product, and that this product was defective and/or unreasonably dangerous. With regard to these allegations, provide the following information:
> a. State each and every fact that in any way supports your allegations that the Icy Hot cream was defective and/or unreasonably dangerous;
> b. State each and every fact that in any way supports your allegations that the Icy Hot cream caused the injuries you claim;
> c. Provide the name and last know address of each and every person who has knowledge of this defective and/or unreasonably dangerous condition, or that the cream caused your injuries;
> d. Provide the name and last known address of the

> custodian of each and every document that in any way proves or shows that the Icy Hot cream was defective or unreasonably dangerous, or that it caused you alleged injuries.

(Corwood's first set of interrogatories to plaintiff attached as Exhibit "C"). In response, Plaintiff stated:

> 14.a.-d. See Plaintiff's complaint.

(Plaintiff's responses to Corwood's first set of interrogatories attached as Exhibit "D"). Plaintiff's interrogatory responses were signed and notarized. (Exhibit "D").

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed. 2d 142 (1970). The moving party initially bears the burden of showing the court that there is no genuine issue of material fact to be decided by trial. Crawford v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 140 L. Ed.2d 759 (1998). When this burden is met, the burden then shifts to the non-moving party to demonstrate that there is a material issue of fact that precludes summary judgment. Clark v. Coats & Clark, Inc., 929 F. 2d 604, 608 (11th Cir. 1991). Faced with a properly supported motion for summary judgment, "the non-movant must then designate, by affidavits, depositions, admissions, and answers to interrogatories, specific facts showing the existence of a genuine issue for trial. Southern Solvents, Inc. v. New Hampshire Inns Co., 91 F. 3d 102, 104 (11th Cir. 1996); Jeffrey v. Sarasota White

Socks, Inc., 64 F. 3d 590, 593-94 (11th Cir. 1995). Rule 56(e) mandates the entry of summary judgment after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to that parties' case as to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 h. ed. 2d 265 (1986).

### III. LEGAL ARGUMENT

The sole claim in Plaintiff's complaint is that the Cool-Hot gel was unreasonably dangerous. This can only be interpreted as stating a product liability claim. Product liability claims brought in Alabama are governed by the Alabama Extended Manufacturers Liability Doctrine (AEMLD). Casrell v. Altec Industries, Inc., 335 So.2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala. 1976). In order to establish liability for her AEMLD claim Plaintiff must show that (1) an injury was caused by one who sold a product in a defective condition, that made the product unreasonably dangerous to the ultimate user or consumer, (2) that the seller was engaged in the business of selling such products, and (3) that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold. Bell v. T. R. Miller Mill Co., Inc., 768 So.2d 953, 957 (Ala. 2000).

> A. *Corwood and Trim Labs are entitled to summary judgment because Plaintiff cannot prove the elements necessary for her AEMLD claim*

The burden of proof rests with the Plaintiff to prove that the product left the defendant's control in an unreasonably dangerous condition and not fit for its expected use, and that that which caused the product to be in such an unfit condition in fact caused the injury. Id. With regard to AEMLD, the Supreme Court of Alabama has stated:

> "The gravamen of the action is not that the defendant failed to exercise due care in the manufacture, design, sale or placing in the commercial stream a defective product; rather, the gravamen of the action is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff or damaged his property when such product substantially unaltered, was put to its intended use."

Atkins v. American Motors Corp., 335 So.2d at 139. AEMLD is a fault based tort, and is not strict liability. Id. In Townsend v. General Motors Corp., 642 So. 2d 411 (Ala. 1994), the Supreme Court of Alabama stated:

> "Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purpose and use. *However, the manufacturer of a product is not an insurer against all harm that may be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident proof or injury proof product. Likewise, the failure of a product does not pre-suppose the existence of a defect. Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown.* See Casrell v. Altec Industries, Inc., 335 So. 2d 128 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134 (Ala. 1976); Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So. 2d 991 (Ala. 1981); Thompson v. Lee, 439 So. 2d 113 (Ala. 1983); Brooks v. Colonial Chevrolet-Buick, Inc., 579 So. 2d 1328 (Ala. 1991)."

Townsend v. General Motors Corp., 642 So. 2d at 415. (emphasis added). The Plaintiff has the burden of proof, and this burden is not shifted to the Defendants until, under traditional standards, the Plaintiff has established a prima facie case. Sears, Roebuck & Company, Inc. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981). "The doctrine of res ipsa loquiter is not applicable in products liability cases - - mere proof of the accident itself is not proof of a defective product; rather, the Plaintiff must present some evidence of a defective product in order to make out a prima facie

case in a products liability action." Brooks v. Colonial Chevrolet-Buick, Inc., 579 So. 2d 1328, 1333 (Ala. 1991).

Allegations that a product is defective are generally classified into three categories. These include (1) a defect in the manufacture of a product, (2) a defect in the design of the product, or (3) a failure by the Defendant to adequately warn of the risk or hazard associated with the product. See Cusimano, *Alabama Tort Law*, 2nd *Ed* p. 523 (1996). Although failure to warn is generally listed as a type of product claim, it is not "subsumed" within AEMLD. Andrews v. John E. Smith's Sons Co., 369 So.2d 781, 785 (Ala. 1979). As such, it is not enough to generally allege AEMLD, or a defective product when making a claim for failure to warn. Instead, failure to warn must be specifically pled. Id. (See also Cusimano, *Alabama Tort Law*, supra at p. 514). Plaintiff has not alleged failure to warn in her complaint, nor has she amended her complaint to do so. Furthermore, Corwood served the following contention interrogatory on Plaintiff and her attorney:

> 14. In your complaint, you allege that you were injured as a result of using the "Icy Hot" type cream product, and that this product was defective and/or unreasonably dangerous. With regard to these allegations, provide the following information:
> a. State each and every fact that in any way supports your allegations that the Icy Hot cream was defective and/or unreasonably dangerous;
> b. State each and every fact that in any way supports your allegations that the Icy Hot cream caused the injuries you claim;
> c. Provide the name and last know address of each and every person who has knowledge of this defective and/or unreasonably dangerous condition, or that the cream caused your injuries;
> d. Provide the name and last known address of the custodian of each and every document that in any way proves or shows that the Icy Hot cream was defective or unreasonably dangerous, or that it caused you alleged injuries.

In response, Plaintiff simply answered "See Plaintiff's Complaint." (Exhibits "C," #14, and "D," #14.) No mention is made of an inadequate warning or failure to warn. Federal Rule of Procedure 56(e) states in part:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Fed. R. Civ. P. 56(e). Because Plaintiff failed to plead inadequate warning in her complaint, or to present any evidence in support of such a claim, in response to Corwood's contention interrogatories, she is precluded from traveling under such a theory. In any event, there is no evidence in the record to support such a theory.

Corwood and Trim Labs are further entitled to Summary Judgment on the two remaining possible theories of design defect, or manufacturing defect. Although Plaintiff does not have to show which of these theories she espouses, she does have to produce some "affirmative" proof that the Cool-Hot gel was defective. Townsend v. General Motors Corp., 642 So. 2d at 415. "Likewise, the failure of a product does not pre-suppose the existence of a defect. Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown." Id. Plaintiff has no such affirmative evidence.

However, Corwood and Trim Labs have presented substantial evidence that neither the design of the product, nor the product itself was defective. Nawab Faridi, the quality control manager at Corwood, and an expert chemist with substantial experience in testing products, including pharmaceuticals, has testified by affidavit that Cool-Hot gel is a non-prescription analgesic

9

gel, used for the temporary relief of minor muscle pain by rubbing it onto the skin. The only active ingredient in the formula is natural menthol crystal. Pursuant to the United States Federal Register and the United States Pharmacopoeia, menthol is recognized as an analgesic, for use in this type product. Furthermore, pursuant to the United States Federal Register, up to 16% of a gel producing a "cool" sensation like Cool-Hot, can be comprised of menthol. United States Federal Register, (1982) Vol. 48, No. 27, § 348.12. However, the Corwood formula only called for 2% menthol. Mr. Faridi further testified that all the other ingredients in the formula are approved by the United States Pharmacopoeia, which is the leading authority on pharmaceutical chemicals and their uses. With the exception of this lawsuit, Corwood has never received a complaint about Cool-Hot gel or this formula. As such the formula, or design of Cool-Hot gel is safe, and is not defective or unreasonably dangerous. (Exhibit "B", ¶ 1-9).

After lot # Z169 was made, it was tested, and found to conform with the specifications called for in the formula. It met all physical specifications including color, odor, appearance, PH level, specific gravity and viscosity. It was also found to contain 1.98% menthol, which was well within the 1.80 to 2.20% range that was acceptable. Finally, Mr. Faridi testified that Corwood has never received a complaint (other than this lawsuit) regarding any of the Cool-Hot gel from lot #Z169, which was produced over five years ago, and expired in 1997. (Id.). If anyone else was burned by a defective batch of Cool-Hot gel they would have complained by now. As such, there was not manufacturing defect. (Id.).

Against this evidence, Plaintiff can only point to the bare allegations in her complaint. When asked for any evidence of a defect, or evidence the gel actually caused her injuries, Plaintiff declined to give any further information. (Exhibit "D" ¶ 14). The bare allegations of Plaintiff's complaint

are not enough to defeat a properly supported motion for summary judgment, nor are they enough to affirmatively show a defect. Fed. R. Civ. P. 56(e); <u>Townsend</u>, <u>supra</u>. Finally, this response falls short of providing the expert testimony necessary for Plaintiff to show a defect. In developing product liability law in Alabama, the Supreme Court, and the Alabama Court of Civil Appeals have come to hold that in complex cases involving mechanical explanations, or chemical compositions, beyond the normal grasp of jurors, the plaintiff must present the testimony of an expert, in order to provide affirmative proof of a defect.

In <u>Brooks v. Colonial Chevrolet-Buick, Inc.</u>, 579 So. 2d 1328 (Ala. 1991), the Supreme Court of Alabama reiterated this opinion, earlier stated in <u>Sears, Roebuck & Co. v. Haven Hills Farm, Inc.</u>, 395 So. 2d 991 (Ala. 1981):

> "We recognize that <u>Sears, Roebuck & Co. v. Haven Hills Farm, Inc.</u>, <u>supra</u>, does not stand for the proposition that expert testimony is always required in such cases; however, it does stand for the proposition that because of the complex and technical nature of the product and in order to present evidence from which a lay jury may reasonably infer that a defective condition of the product was the cause of the product's failure and the cause of the resulting injury to the plaintiff, expert testimony is usually essential and, therefore, usually required."

<u>Brooks v. Colonial Chevrolet-Buick, Inc.</u>, 579 So. 2d at 1332. In <u>Brooks</u>, the plaintiffs alleged that the brakes on their 1986 Chevrolet Cavalier failed on two separate occasions, and they brought suit pursuant to AEMLD. The plaintiffs contended that the product at issue, i.e. the brakes, were not so complex that an expert was needed to explain the cause and effect of the situation to the jurors. The Supreme Court of Alabama disagreed however, and stated:

> "[A]n automobile brake system is composed of, among other parts, caliburs, rotors, disks, rear-wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar

11

> to a lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective without the assistance of expert testimony. In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect."

Id. at 1333. The Supreme Court went on to note that the testimony of the plaintiffs themselves, that the brakes had failed, was insufficient to prove a defect, and that in the absence of any expert testimony providing any such proof, their AEMLD claim must fail. Id. Finally, the court stated:

> "It appears, as GM contends, that the [plaintiffs] argument that their case should have been submitted to the jury is actually based on the doctrine of res ipsa loquiter. The doctrine of res ipsa loquiter is not applicable in products liability cases - - mere proof of the accident itself is not proof of a defective product; rather, the plaintiff must present some evidence of a defective product in order to make out a prima facie case in a products liability action."

Id. (citations omitted). In Donnelly v. Club Car Inc., 724 So. 2d 25 (Ala. Civ. App. 1998), the Alabama Court of Civil Appeals held that expert testimony was need to support an AEMLD claim, brought by a plaintiff who sued a golf cart manufacturer, when a plexiglass windshield shattered. In analyzing the issue, the Court of Civil Appeals of Alabama stated:

> "Moreover, the critical issue in this case is whether the chemical and physical composition of the plexiglass windshield was adequate to safely serve its intended purpose. This is the 'type of complex and technical' issue that requires expert evidence in order to create a genuine issue of material fact as to the presence of a defect."

Id. at 28. (See also Townsend v. General Motors Corp., 642 So. 2d 411 (Ala. 1994), involving a failed air-brake system wherein the Supreme Court of Alabama required expert testimony; Cooper v. Toshiba Home Tech Corp., 76 F. Supp. 2d 1269 (M.D. Ala. 1999), wherein Judge DeMent, of the United States District Court for the Middle District of Alabama, recognized the expert testimony

requirement, and found that expert testimony was needed by a plaintiff in order to show that a kerosene heater was defective; Browder v. General Motors Corp., 5 F. Supp. 2d 1267 (M.D. Ala. 1998) wherein this District also found that expert testimony was needed to prove a defect in a seatbelt system).

Pursuant to Brooks, Townsend, Cooper, and Browder, supra, Plaintiff must present some form of expert testimony that the Cool-Hot gel was defective or unreasonable dangerous. It is not enough for her to simply state she put it on and then was burned. Donnelly, supra, specifically recognized that when the issue is whether a "chemical" and physical composition of the product was adequate to safely serve its intended purpose, there must be expert testimony. Donnelly v. Club Car Inc., 724 So. 2d at 28. Like Donnelly, the issue in this case is whether the chemical formula and composition of the gel was defective or unreasonably dangerous. A lay juror cannot be expected to understand the chemical formula for Cool-Hot gel, or other analgesic type gels. As such, this too is "[p]recisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect". More than four years have passed since the incident in question allegedly occurred, and over two years have passed since this suit was originally filed in state court. To date, the Plaintiff has failed to present any expert testimony or evidence that the Cool-Hot gel was defective or unreasonably dangerous or that it in fact caused Plaintiff's injuries. It is has been affirmatively shown by Corwood and Trim Labs, by the affidavit of Nawab Faridi, that the design of the Cool-Hot gel was in fact safe, and that the product itself, conformed to all of the specifications for the design, and passed the quality control test before it was packaged and left Corwood. Without affirmative evidence of a defect, Plaintiff's claim must fail. Townsend, supra.

B.  *There is no causal connection between Trim Labs and Plaintiff's injuries*

Trim Labs is entitled to Summary Judgment for the additional reason that Plaintiff can prove no causal connection between its actions of merely distributing the gel, and her injuries. Irwin Thaler testified by affidavit that Trim Labs did not manufacture the gel. Instead, Trim Labs ordered the gel from Corwood. Corwood manufactured the gel, tested it, and then packaged it. The gel was then shipped from Trim Lab's facility to Rite Aid. (Exhibit "A"). To establish a lack of causal relation as a defense to a claim brought under AEMLD, a Defendant must show (1) that he received the product in a defective condition, (2) that he did not contribute to this defective condition, and (3) that he had neither knowledge of the defective condition nor an opportunity to inspect the product that was superior to the knowledge or opportunity of the consumer. Huprich v. Bitto, 667 So. 2d 685, 688 (Ala. 1995). The "superior" opportunity to inspect the product must be meaningful. Consolidated Pipe & Supply Co., Inc. v. Stockham Valves & Fittings, Inc., 365 So. 2d 968 (Ala. 1978). "If the defective was latent and could not have been discovered by either consumer or distributor by reasonable inspection, neither had a superior opportunity."

Both Corwood and Trim Labs contend that the product at issue was not defective, and as such when Trim Labs received it it was not in a defective condition. Pursuant to Erwin Thaler's affidavit, Trim Labs had no knowledge of an alleged defective condition. Finally, pursuant to Thaler's affidavit, Trim Labs had no opportunity to inspect the product to discover this alleged defective condition, because it was fully packaged and sealed when Trim Labs received it. As such it did not have a "superior" opportunity to inspect it. It also never had an opportunity to "contribute" to the defective condition as shown by the fact the containers were sealed when it possessed the gel.

14

Trim Labs was merely a "middleman" and as such liability under AEMLD should not apply. (See Townsend v. General Motors Corp., 642 So.2d at 425, wherein the lack of causal defense was allowed to a garbage truck retailer who did not design or manufacture the truck, was not on notice of a defect, and was merely a middleman). Because Trim Labs did not contribute to any alleged defect in the Cool-Hot gel, nor did it have an opportunity to inspect it, it is entitled to summary judgment based on the lack of causal relation defense.

    C.    *Plaintiff has violated the statute of limitation.*

Finally, Corwood and Trim Labs re-adopt the arguments set forth in their previously filed motions to dismiss, and briefs in support based upon Plaintiff's violation of the statute of limitations. This incident allegedly occurred on August 1, 1996. AEMLD actions are subject to a two year statute of limitations. Ala. Code (1975) §6-2-39(i). Plaintiff's original complaint was filed within the two year statute, but she did not substitute Corwood or Tim Labs until almost four years passed since the accident. As is explained in Corwood and Trim Labs' motion, and briefs, this substitution was untimely, and thus the statute of limitation ran. All arguments contained in Corwood and Trim Labs' motions to dismiss, Corwood's removal petition (which it asked the Court to consider as its brief in support of its motion to dismiss), and Trim Labs' brief in support of its motion to dismiss are adopted in their entirety.

## CONCLUSION

Based upon the foregoing reasons, Corwood and Trim Labs are entitled to Summary Judgment as a matter of law.

_____
COOPER C. THURBER          THURC4686
S. WESLEY PIPES            PIPES6226
Attorneys for Defendant Corwood Laboratories, Inc.

OF COUNSEL:
**LYONS, PIPES & COOK, P.C.**
2 North Royal Street
P.O. Drawer 2727
Mobile, AL 36652
(334) 432-4481

_____
FORREST S. LATTA           LATTF0526
Attorney for Trim Laboratories, Inc.

OF COUNSEL
PIERCE, LEDYARD, LATTA & WASDEN, P.C.
P.O. Box 16046
Mobile, AL 36616

### CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States Mail, properly addressed, and first class postage prepaid on this the 2 day of January, 2001, to the following:

James Harvey Tipler, Esquire
P.O. Box 1397
Andalusia, AL 36420

George Thomas Yearout, Esq.
1500 Irvin Center Drive
Suite 450
Birmingham, Alabama 35242

_____
S. WESLEY PIPES